**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IVAN DROKIN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MARCO RUBIO, *et al.*,<br><br>Defendants. | Case No. 25-cv-1928 (JMC) |

**MEMORANDUM OPINION**

Ivan Drokin sues alongside his spouse, Elena Ericheva, and minor child, O.E. (collectively, "Plaintiffs"), seeking to compel adjudication of their immigration visa applications. Plaintiffs name as Defendants Secretary of State Marco Rubio; Acting Director of the Office of Screening, Analysis, and Coordination (SAC) Robert Jachim; and Acting Director of the National Vetting Center (NVC) Kenneth Platek. Plaintiffs contend that their applications, which remain in administrative processing, have been unreasonably delayed in violation of the Administrative Procedure Act (APA) and the Mandamus Act. Defendants have moved to dismiss Plaintiffs' claims on various grounds. While the Court does not find persuasive Defendants' arguments for dismissal on the basis of consular nonreviewability or lack of discrete, nondiscretionary agency action, the Court does agree that Plaintiffs have failed to state a plausible claim for unreasonable delay. Accordingly, the Court will **GRANT** Defendants' motion to dismiss.[1]

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion by, for example, altering capitalization or omitting internal quotation marks, emphases, citations, and alterations. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

## I. BACKGROUND

The Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1101 *et seq.*, governs the issuance of visas to immigrants pursuing admittance into the United States. The INA authorizes the issuance of employment-based visas to, among others, noncitizens who qualify as "priority workers," including noncitizens with "extraordinary ability in the sciences, arts, education, business, or athletics." 8 U.S.C. § 1153(b)(1)(A)(i). Spouses and children "acquired before the principal applicant's admission to the United States . . . who [are] accompanying or following to join" the applicant are accorded derivative status. 9 FAM 502.1-1(C)(2)(a); *see also* 8 U.S.C. § 1153(d). A noncitizen seeking an employment-based visa must first file with the U.S. Citizenship and Immigration Services (USCIS) a Form I-140 immigrant visa petition. ECF 1 ¶ 30; *see* 8 C.F.R. § 204.5(a). If USCIS approves the petition, it is then sent to the NVC for pre-processing. ECF 1 ¶ 36; *see also* 8 C.F.R. § 204.5(n)(1); U.S. Dep't of State, *Immigrant Visa Process*, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html.

After submitting fees, completing an online application, and providing supporting documentation to the NVC, the visa applicant is interviewed by a consular officer. ECF 1 ¶¶ 37–38; *see also* 22 C.F.R. § 42.62. At the conclusion of the interview, "the consular officer must [either] issue . . . [or] refuse the visa." 22 C.F.R. § 42.81(a). In some cases, a consular officer may determine that a visa application requires "administrative processing," and may provisionally "refuse" the application under Section 221(g) of the INA pending review of additional information. *See* U.S. Dep't of State, *Immigrant Visa Process*, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-10-prepare-for-the-interview/step-12-after-the-interview.html.

Plaintiff Ivan Drokin is the principal applicant for an employment-based immigrant visa. ECF 1 ¶ 50. Drokin's spouse, Plaintiff Ericheva, and their minor child, Plaintiff O.E., are derivative beneficiaries. *Id*. Drokin filed a Form I-140 petition with USCIS, seeking admission as a priority worker, in June 2024. *Id.* ¶ 52. His petition was approved for processing and forwarded to the NVC in July 2024. *Id.* ¶ 53. On December 17, 2024, Plaintiffs were interviewed by a consular officer at the U.S. Embassy in Belgrade, Serbia. *Id.* ¶ 1. According to Plaintiffs, at the conclusion of this interview, the consular officer "informed Plaintiffs that their applications required further administrative processing." *Id.* ¶ 55. Drokin and Ericheva were also instructed to provide additional information, including their CVs and a supplemental questionnaire, to the Embassy via email. *Id.* ¶¶ 55–56. The State Department's website listed Plaintiffs' applications as "refused," but included additional text noting that if they were "informed by the consular officer that [their] case was refused for administrative processing . . . [they would] receive another adjudication once such processing [was] complete." ECF 1-3 at 1.

Six months passed without any additional information regarding Plaintiffs' application status. *See* ECF 1 ¶¶ 11, 83. On July 19, 2025, Plaintiffs filed a complaint and petition for a writ of mandamus in this Court seeking an order compelling Defendants to act on their visa applications. *Id.* ¶ 12. Defendants moved to dismiss. ECF 5.

## II. LEGAL STANDARD

The Court resolves the pending motion under Rule 12(b)(6).[2] Under that rule, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

[2] Defendants also seek dismissal under Rule 12(b)(1). Defendants argue that, because no discrete, nondiscretionary agency action is outstanding, Plaintiffs have not met their burden of proving that the government has waived sovereign immunity. ECF 8 at 8–9. Defendants point to *Payne v. Becerra*, in which the court explained that, "if all three . . . threshold requirements" for mandamus relief—including that a "federal official is violating a clear duty to act"—are not met, "the court must dismiss the claim for lack of subject matter jurisdiction," and that "sovereign immunity is waived under the APA only for claims where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." No. 22-cv-869, 2023 WL 3376630, at *5 (D.D.C. May 11, 2023). Here, Plaintiffs assert

*v. Twombly*, 550 U.S. 544, 570 (2007). In making that determination, the Court relies on the complaint itself, which may include "documents attached as exhibits or incorporated by reference in the complaint." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011); *see also EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). The Court may also "take judicial notice of information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022) (citing *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013)). The Court must treat the "complaint's well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiffs' favor. *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020).

## III. ANALYSIS

Defendants move to dismiss Plaintiffs' case on several grounds. To start, Defendants assert that two threshold issues bar review of Plaintiffs' claims. First, they argue that "this suit runs headfirst into the consular non-reviewability doctrine." ECF 5 at 14. Second, they contend that Plaintiffs' visa applications have already been refused, and, as a result, there is no remaining nondiscretionary agency action pending, precluding relief under the Mandamus Act and the APA. *Id.* at 9. The Court concludes that neither of these threshold issues warrants dismissal. The consular nonreviewability doctrine does not apply here because Plaintiffs do not seek judicial review of any consular officer's final determination; rather, Plaintiffs' claims are based on Defendants' failure to render a final decision on their pending applications. Additionally, the Court concludes that Plaintiffs can bring this suit to compel a final decision on their applications because issuing a decision on their pending visa applications is a discrete agency action required by law.

---

that "Defendants owe Plaintiffs a nondiscretionary, mandatory duty to adjudicate their immigrant visa applications." ECF 7 at 30. And, as discussed in detail, *infra* Section III.B, the Court concludes that issuing a final decision on Plaintiffs' pending visa applications is a discrete agency action required by law. Accordingly, the Court is satisfied that it has subject matter jurisdiction.

Having resolved those issues in Plaintiffs' favor, the Court turns to Defendants' third basis for dismissal—that Plaintiffs have failed to state a claim for unreasonable delay. Only six months elapsed between Plaintiffs' consular interview and the filing of their complaint.[3] Plaintiffs have not alleged facts sufficient to state a claim that this delay is unreasonable. Accordingly, the Court grants Defendants' motion to dismiss under Rule 12(b)(6).

**A. Consular Nonreviewability**

The Court begins with Defendants' argument for dismissal based on the doctrine of consular nonreviewability. ECF 5 at 14. The doctrine of consular nonreviewability "shields a consular official's decision to issue or withhold a visa from judicial review . . . ." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). Because decisions regarding the admission and exclusion of noncitizens "may implicate relations with foreign powers or involve classifications defined in the light of changing political and economic circumstances[,] . . . such judgments are frequently of a character more appropriate to either the Legislature or the Executive." *Id.* (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)).

This doctrine, however, does not apply where plaintiffs "do not seek judicial review of a consular decision, but instead seek a final decision on their applications." *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, No 18-cv-1388, 2019 WL 367841, at *10 (D.D.C. Jan. 30, 2018). That is the case here. Plaintiffs are not asking the Court to pass judgment on a consular officer's reason for refusing their application—they wish to compel Defendants to make a decision on their applications that remain in administrative processing. Indeed, "a long line of decisions" from courts in this district have concluded that the

[3] Plaintiffs contend that the Court should consider the time between USCIS's last action and the issuance of this Court's opinion. ECF 7 at 49 n.12. However, as discussed, *infra* Section III.C.1, even assuming delay should be measured in this way, Plaintiffs still have not sufficiently pled that the delay in this case is unreasonable.

doctrine of consular nonreviewability does *not* prohibit judicial review in cases like this one because the doctrine "applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022) (collecting cases).

Defendants point to an unpublished D.C. Circuit opinion, *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), arguing that a consular officer's initial refusal of a visa application under INA § 221(g) is a "final" decision, and thus unreviewable. ECF 5 at 16. In *Karimova*, the D.C. Circuit determined that a visa applicant could not compel a consular officer to take further action on her application, which had been refused and placed in administrative processing, because her matter had "already been concluded." *Karimova*, 2024 WL 3517852, at *4. However, as this Court has previously recognized, because *Karimova* is an unpublished decision, it is not binding precedent under the D.C. Circuit's rules. *See, e.g.*, *Tehran v. Rubio*, No. 25-cv-1584, 2025 WL 3551629 at *3 (D.D.C. Dec. 11, 2025); *Asghari v. Rubio*, No. 25-cv-1666, 2026 WL 890411 at *3 (D.D.C. Mar. 31, 2026); *see also* D.C. Cir. R. 36(e)(2) ("While unpublished dispositions may be cited to the court in accordance with FRAP 32.1 and Circuit Rule 32.1(b)(1), a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition.").[4]

[4] In support of *Karimova*'s precedential value, Defendants point to *Khaksari v. Chairman, Broadcasting Board of Governors*, another unpublished decision in which the D.C. Circuit cited D.C. Circuit Rule 32.1(b)(1)(B) and noted that a prior unpublished decision "ha[d] the force of precedent." 451 F. App'x 1, 4 (D.C. Cir. 2011) (per curiam); *see also* ECF 5 at 11 n.2. Rule 32.1(b)(1)(B) states only that some unpublished dispositions "*may* be cited as precedent." D.C. Cir. R. 32.1(b)(1)(B) (emphasis added). It does not provide that any such opinion is binding. Indeed, as cited above, D.C. Circuit Rule 36(e)(2) makes clear that "while unpublished dispositions may be cited to the court[,] . . . a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." D.C. Cir. R. 36(e)(2); *see also In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) (highlighting features of unpublished opinions that make them "not suitable for governing future cases").

Moreover, the Court is still persuaded by the reasoning of many courts in this district that have held—including after *Karimova*—that the doctrine of consular nonreviewability does *not* bar review where plaintiffs sufficiently allege that their applications have not reached final adjudication, including where applications have been placed in administrative processing. *See, e.g.*, *Shushkov v. Rubio*, No. 24-cv-2265, 2025 WL 2389939, at *4 (D.D.C. Aug. 18, 2025) (concluding that, where plaintiff's visa application was placed in administrative processing following his consular interview, plaintiff "sufficiently alleged that he has not yet received a final decision"); *Alsaraj v. U.S. Dep't of State*, No. 24-cv-3399, 2025 WL 2732704, at *5 (D.D.C. Sept. 25, 2025) (same); *Tolymbekova v. Rubio*, No. 25-cv-295, 2025 WL 2576312, at *4–5 (D.D.C. Sept. 5, 2025) (same); *Aramnahad v. Rubio*, No. 24-cv-1817, 2025 WL 973483, at *8 (D.D.C. Mar. 31, 2025) ("The court's conclusion in *Karimova* that refusing an application and placing it in administrative processing is a 'final' decision does not square with the facts Plaintiffs have alleged . . . . The officer's decision to place Plaintiffs' application in administrative processing is not equivalent to rendering a final decision.").[5]

Because the Court "must focus on what is actually happening" and not allow the government to "elevate form over substance to avoid review," the Court considers the facts Plaintiffs have alleged to determine whether a final decision has been made on their applications. *Aramnahad*, 2025 WL 973483, at *8 (quoting *Al-Gharawy*, 617 F. Supp. 3d at 16). After all, at the motion-to-dismiss stage, the Court is bound to assume the truth of Plaintiffs' well-pleaded

[5] Defendants also invoke published decisions of the D.C. Circuit and U.S. Supreme Court, asserting that they "reaffirm[]" the "scope" and "confin[e] the exceptions to the doctrine" of consular nonreviewability. ECF 5 at 14–15 (citing *Dep't of State v. Muñoz*, 602 U.S. 899 (2024); *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020 (D.C. Cir. 2021)). In particular, Defendants highlight language from *Baan Rao* confirming that the doctrine "shields [from judicial review] a consular officer's decision to . . . withhold a visa[.]" *Id.* at 14 (quoting *Baan Rao*, 985 F.3d at 1024). As explained above, the Court agrees that it cannot review a consular officer's final decision to refuse, or "withhold", a visa. But that is not what Plaintiffs seek in this case. And neither of the cases Defendants cite addresses the question of whether nominal refusal of a visa application pending administrative processing is a final decision for purposes of consular nonreviewability. Accordingly, these cases do not alter the Court's analysis.

material factual allegations. *See N. Am. Butterfly*, 977 F.3d at 1249. Plaintiffs allege that, at the conclusion of their consular interview, they were told that their applications "required further . . . processing" and were instructed to provide additional information and documentation. ECF 1 ¶ 55. Plaintiffs further allege that the online status of their applications includes a notice indicating that they "will receive another adjudication once [administrative] processing is complete." *Id.* ¶ 57. Taking these facts together, the Court is satisfied that Plaintiffs have plausibly alleged that their applications remain under consideration and that they are still awaiting a final decision. *See Janay v. Blinken*, 743 F. Supp. 3d 96, 112 (D.D.C. 2024) ("In other words, the application is still being processed and a decision is still forthcoming. It has only been 'refused' in the far-from-literal sense that it has not yet been 'granted' or 'denied.'").

Because Plaintiffs do not ask the Court to review a consular officer's decision, but instead seek to compel a final determination on their applications, the doctrine of consular nonreviewability does not bar judicial review of Plaintiffs' claims.

### B. Nondiscretionary Duty to Take Agency Action

Defendants also argue that Plaintiffs have failed to "identify a clear, nondiscretionary duty requiring a consular officer to take any action," and, as a result, have failed to state a claim upon which relief may be granted. ECF 5 at 9. To assert a claim of unreasonable delay under the APA, a plaintiff "must first allege that the agency failed to take a discrete agency action that it is required to take." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)); *see also* 5 U.S.C. § 555(b) (requiring agencies to take nondiscretionary actions within a "reasonable time"); 5 U.S.C. § 706(1) (granting courts the authority to "compel agency action unlawfully withheld or unreasonably delayed"). To obtain a writ of mandamus, a plaintiff must show that the government possesses "a clear duty to

act" under the circumstances. *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005)); *see also* 28 U.S.C. § 1361 (providing district courts with jurisdiction over mandamus suits to compel action by an officer of the United States). Because "the standards for obtaining relief" under the APA and the Mandamus Act are "essentially the same" in this context, the Court evaluates these claims jointly. *Al-Gharawy*, 617 F. Supp. 3d at 17 (quoting *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010)).

Plaintiffs assert that completing the processing of their visa applications is a nondiscretionary action that Defendants are required by law to take. *See* ECF 1 ¶ 80–81. They contend that this duty arises from, among other sources: (1) the text of the INA, which states that "all immigrant visa applications shall be reviewed and adjudicated by a consular officer," 8 U.S.C. § 1202(b); *see also* ECF 7 at 31; and (2) 22 C.F.R. 42.81(e), which provides that "if a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which refusal was based, the case shall be reconsidered," ECF 7 at 19. Defendants, on the other hand, again argue that *Karimova* compels the Court to conclude that a final adjudication has already occurred and that there is no remaining agency action they are required to take. ECF 5 at 13.

The Court finds that Plaintiffs have the better argument. As discussed above, *Karimova* is not binding Circuit precedent. *See supra* Section III.A. The decision would be, at best, persuasive, not "dispositive" as Defendants claim. ECF 5 at 13. The Court has already concluded that Plaintiffs' complaint sufficiently alleges that they are still awaiting a final decision on their visa applications. *See Hajizadeh v. Blinken*, No. 23-cv-1766, 2024 WL 3638336, at *3 (D.D.C. Aug. 2, 2024) ("Issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations.").

Moreover, Plaintiffs' reliance on additional sources for Defendants' purported duty distinguishes this case from *Karimova*. In *Karimova*, the plaintiff "rooted the asserted duty to act . . . in Section 555(b) of the [APA]," "an ancillary provision stating that 'each agency shall proceed to conclude a matter presented to it' 'with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time.'" *Karimova*, 2024 WL 3517852, at *2–3 (quoting 5 U.S.C. § 555(b)). The court in *Karimova* considered whether 5 U.S.C. § 555(b)—"and *only* Section 555(b)"—"place[d] a clear, nondiscretionary duty on [a] consular officer." *Id.* at *3. The court found that, as an "ancillary," "non-specific directive," it did not. *Id.* Here, Plaintiffs do not solely invoke APA Section 555(b); they also ground their request in 8 U.S.C. § 1202(b) and 22 C.F.R. § 42.81(e), arguing that both provisions supply a nondiscretionary agency duty to act. ECF 1 ¶ 49, 80–81; *see also* ECF 7 at 19, 31. The Court agrees and considers each provision in turn below.

Starting with 8 U.S.C. § 1202(b), this Court has previously held that the statute supplies a nondiscretionary duty to render a final decision on visa applications and remains persuaded by the authority that led to its conclusion. *See, e.g.*, *Tehran*, 2025 WL 3551629, at *5; *Asghari*, 2026 WL 890411, at *5. But the Court recognizes that, while some courts in this district have similarly concluded that 8 U.S.C. § 1202(b) "confers on consular officers a nondiscretionary duty to review and adjudicate immigrant visa applications," *see, e.g.*, *Thein v. Trump*, No. 25-cv-2369, 2025 WL 2418402, at *11 (D.D.C. Aug. 21, 2025); *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 235 (D.D.C. 2021), *rev'd on other grounds sub nom. Goodluck v. Biden*, 104 F.4th 920 (D.C. Cir. 2024); *Gomez v. Trump*, 485 F. Supp. 3d 145, 198 n.23 (D.D.C. 2020), others have determined that § 1202(b) does *not* supply such a nondiscretionary duty, *see, e.g.*, *Rahiminejad v. Rubio*, No. 24-cv-3495, 2025 WL 2144092, at *3 (D.D.C. July 29, 2025) (concluding that the relevant

language in § 1202(b) merely illustrates "*who* reviews visa applications rather that whether all applications must be reviewed"); *Tesfaye v. Blinken*, No. 22-cv-411, 2022 WL 4534863, at *4 (D.D.C. Sept. 28, 2022) (explaining that cases locating a nondiscretionary duty in § 1202(b) in the context of challenges to "general policies" halting visa application processing do not provide support for the "contention that Defendants have a non-discretionary, mandatory duty to complete" review of any *individual* plaintiff's visa application). Accordingly, the Court takes this opportunity to elaborate on its position. The Court reached its conclusion that § 1202(b) supplies a nondiscretionary duty because the statute requires that "*all* immigrant visa applications *shall* be reviewed." Accordingly, the provision "establishes a specific principle of comprehensive review and adjudication by consular officers," and thus supplies a nondiscretionary duty to act. *Thein*, 2025 WL 2418402, at *11. This conclusion follows logically from the plain text of the statute. In addition to including the word "shall," which "ordinarily . . . indicates a mandatory duty," *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 671 (D.C. Cir. 2016), the relevant language in § 1202(b) has as its subject "*all* immigrant visa applications," 8 U.S.C. § 1202(b) (emphasis added). In light of the "cardinal principle of statutory construction that [courts] must give effect, if possible, to every . . . word of a statute," *Williams v. Taylor*, 529 U.S. 362, 404 (2000), the Court reads § 1202(b) as conferring a duty to adjudicate "*all*" immigrant visa applications, and takes the language to refer principally to that duty itself, rather than to the question of who must conduct the adjudication. For related reasons, the Court is unpersuaded that § 1202(b) only supplies a nondiscretionary duty where a broader policy limiting visa adjudications is challenged. Defendants' failure to move "*all* . . . visa applications"—including Plaintiffs'—toward a final decision violates a nondiscretionary duty imposed by § 1202(b). *See Thein*, 2025 WL 2418402, at *11.

The Court also agrees with Plaintiffs that 22 C.F.R. § 42.81(e) provides another possible source of a nondiscretionary duty to render a final decision on their applications that have been provisionally refused. ECF 1 ¶ 49; *see also* ECF 7 at 19. Under 22 C.F.R. § 42.81(e), "if a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e). "An agency can create a non-discretionary duty by binding itself through a regulation carrying the force of law." *Elec. Priv. Info. Ctr. v. Internal Revenue Serv.*, 910 F.3d 1232, 1244 (D.C. Cir. 2018). And courts in this district have repeatedly concluded—including after *Karimova*—that 22 C.F.R. § 42.81(e) supplies a nondiscretionary duty to act in cases involving immigrant visa applications that have been placed in administrative processing, where the applicant provides additional information within the relevant timeframe. *See, e.g.*, *Aramnahad*, 2025 WL 973483, at *8; *Diabin v. Rubio*, No. 24-cv-3374, 2025 WL 1824841, at *4 (D.D.C. July 2, 2025).

Such is the case here. Plaintiffs submitted additional information on December 19, 2024, two days after their applications were provisionally refused. ECF 1 ¶¶ 55–56. And drawing all reasonable inferences in Plaintiffs' favor, the Court finds that the fact that the additional information submitted was requested by a consular officer strongly suggests that the information would "tend[] to overcome the [relevant] ground of ineligibility." 22 C.F.R. § 42.81(e); *see Diabin*, 2025 WL 1824841, at *4; U.S. Dep't of State, *Administrative Processing Information*, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (explaining that "a consular officer will request additional information *when she or he believes the information is relevant to establishing that an applicant is eligible for the visa sought*" (emphasis added)). Finally, the Court notes that while Defendants

raised arguments related to other potential sources of a nondiscretionary duty to act, they did not address why § 1202(b) and 22 C.F.R. § 42.81(e) would not confer such a duty. *See generally* ECF 8.

In any event, even "absent binding precedent supporting [the] position that the INA imposes a non-discretionary duty on the government to adjudicate . . . visas, the assumption of reviewability permits consideration of the merits of [Plaintiffs'] visa mandamus claim." *Hamdan v. Oudkirk*, No. 24-cv-1001, 2024 WL 4553983, at *7 (D.D.C. Oct. 23, 2024). Plaintiffs have sufficiently alleged that there remains a discrete action Defendants are required to take under 8 U.S.C. § 1202(b) and 22 C.F.R. § 42.81(e). Accordingly, the Court proceeds to considering whether Plaintiffs have adequately stated a plausible claim for unreasonable delay.

**C. Unreasonable Delay**

Defendants argue that Plaintiffs have failed to state a plausible claim of unreasonable delay. ECF 5 at 17. Plaintiffs counter that "unreasonable delay claims require fact-based inquiries not suitable for disposition" at the motion-to-dismiss stage. ECF 7 at 45.[6] However, courts in this jurisdiction routinely assess unreasonable delay claims at this stage, and the Court finds it appropriate to do so here as well. *See, e.g.*, *Da Costa*, 80 F.4th at 346 (affirming district court dismissal for failure to state a claim of unreasonable delay); *Janay*, 743 F. Supp. 3d at 118 (granting motion to dismiss after assessing *TRAC* factors and determining plaintiff failed to state a claim for

[6] Plaintiffs highlight that Defendants did not provide a certified administrative record or detailed government declaration with their motion to dismiss. ECF 7 at 12 n.1, 46. The Court agrees with Defendants that the production of an administrative record is not necessary here. Courts in this district have recognized that the Local Rule requiring submission of a certified list of the contents of the administrative record does not apply in cases involving agency inaction. *See Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Vets. Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) ("If an agency fails to act, there is no 'administrative record' for a federal court to review."); *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 163 n.2 (D.D.C. 2021). In any event, the Court finds that an administrative record would not aid it in deciding this motion to dismiss; as a result, to the extent that Local Rule 7(n)'s requirements apply to this case, the Court waives compliance. *See Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018).

unreasonable delay); *Hajizadeh*, 2024 WL 3638336, at *6 (same). Ultimately, the Court agrees with Defendants that Plaintiffs have not sufficiently alleged that Defendants' delay warrants judicial intervention.

The central question in evaluating a claim of unreasonable delay is "whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC* (*TRAC*), 750 F.2d 70, 79 (D.C. Cir. 1984)).[7] To assess the reasonableness of delays, courts analyze six "*TRAC* factors":

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (quoting *TRAC*, 750 F.2d at 80).

The *TRAC* factors are not "ironclad." *Hajizadeh*, 2024 WL 3638336, at *4. Each case "must be analyzed according to its own unique circumstances" and "will present its own slightly different set of factors to consider." *Id.* (quoting *Air Line Pilots Ass'n v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984)). In the visa application context, the first and fourth factors are "most important." *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 11 (D.D.C. 2024) (citing *Da Costa*, 80 F.4th at 340). The Court considers the *TRAC* factors below.

---

[7] Plaintiffs argue that, because *TRAC* "was . . . brought under a claim for writ of mandamus, not APA relief," the "standard adopted in *TRAC* . . . is not adequate for addressing the distinct question of whether an agency's delay is 'unreasonable' within the meaning of the APA, 5 U.S.C. § 706(1)." ECF 7 at 45. However, in the case Plaintiffs themselves cite, the D.C. Circuit made clear that, while the *TRAC* framework was "set forth . . . to assess whether agency delays are 'so egregious as to warrant mandamus' . . . we have routinely applied the same framework to assess claims that agency action has been 'unreasonably delayed' for purposes of the Administrative Procedure Act, 5 U.S.C. § 706(1)." *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 815 (D.C. Cir. 2024).

### *1. Factors 1 & 2*

The first two factors are typically analyzed together; they address "whether there is any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay." *Hajizadeh*, 2024 WL 3638336, at *4. Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Where there is no "congressionally supplied yardstick, courts typically turn to case law as a guide" to determine whether a delay is reasonable. *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020).

Here, Plaintiffs offer 8 U.S.C. § 1571(b) as a "congressionally supplied yardstick," arguing that the statute provides "a specific timetable where analogous statutory and regulatory exhortation exist." ECF 7 at 50. Section 1571(b) provides that "it is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). However, as Plaintiffs acknowledge, this "statutory language is merely precatory." ECF 7 at 50; *see also Da Costa*, 80 F.4th at 344 (describing § 1571(b) as an "aspirational statement" that is "insufficient to set a deadline"). The Court thus looks to caselaw "as a guide." *Sarlak*, 2020 WL 3082018, at *6.

In this district, length of delay is usually evaluated from the most recent government action to the date upon which a plaintiff seeks relief in court. *See, e.g.*, *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *7 n.7 (D.D.C. Jan. 30, 2024) ("The proper method for calculating delay . . . is the length of time between the last action the government took on a visa

application and the filing of plaintiff's complaint. The last action taken on plaintiff's visa application was his consular interview . . . ."). While the Court acknowledges that there are "no bright lines" with respect to delay length, "district courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Sarlak*, 2020 WL 3082018, at *6.

Approximately six months elapsed between Plaintiffs' consular interview and the filing of their complaint. Even if the Court were to consider the approximately 21 months between the last government action taken on Plaintiffs' applications and the issuance of this decision, the timeline in this case would still tilt in Defendants' favor. *See, e.g.*, *Shabestary v. Sanders*, No. 24-cv-362, 2024 WL 5118229, at *6 (D.D.C. Dec. 16, 2024) (concluding that a "22-month delay in processing" was not unreasonable); *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (29 months); *Arab*, 600 F. Supp. 3d at 70 (30 months). The delay here falls within the realm of general reasonableness no matter how the Court calculates it. As a result, the first and second factors weigh in favor of Defendants.

***2. Factor 4***

The fourth *TRAC* factor requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Because granting relief in the context of visa applications would generally require "reorder[ing] a queue of applicants seeking adjudication," this factor often weighs strongly in favor of defendants. *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149–50 (D.D.C. 2021); *see also Akrayi v. U.S. Dep't of State*, No. 22-cv-1289, 2023 WL 2424600, at *4 (D.D.C. Mar. 9, 2023) ("Precedent in this circuit recognizes that expediting review here would merely redirect resources from other cases."); *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (noting that the court refuses to grant relief where "a judicial

order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain”). However, where a plaintiff sufficiently alleges that “there is no true queue,” defendants may be unable—at the motion-to-dismiss stage—to “maintain their argument that prioritizing the adjudication of [a plaintiff’s] visa requests would displace others.” *Ahmed*, 759 F. Supp. 3d at 13–14.

Plaintiffs allege that certain forms of administrative processing are “not addressed or resolved on a first-in-first-out basis.” ECF 1 ¶ 47. Specifically, Security Advisory Opinions—interagency review processes that are conducted when consular officers deem that additional security-related vetting is required—are not resolved in the order they are received. *See id.*; ECF 1-1 ¶ 14–15, 18, 27. And Plaintiffs argue that, because Defendants have not demonstrated the existence of a “line Plaintiffs would be cutting through,” the fourth factor weighs in their favor. ECF 7 at 54. It is true that, beyond asserting that “Plaintiffs [are asking] this Court to prioritize Plaintiffs’ applications ahead of others,” ECF 5 at 21; *see also* ECF 8 at 26, Defendants do not confirm that administrative processing is addressed on a first-come, first-served basis. However, at the motion-to-dismiss stage, the Court looks to Plaintiffs’ well-pleaded allegations to determine whether the complaint states a claim for relief. Here, Plaintiffs have not alleged any specific facts indicating that *their* applications are undergoing a form of administrative processing that does not operate under first-in-first-out principles, or that compelling action on their applications would not result in the improper reshuffling of agency priorities. As a result, Plaintiffs have not sufficiently alleged that there “is no true queue,” such that the fourth factor would shift in their favor. Accordingly, as is generally true in the visa application context, the fourth factor weighs in favor of Defendants.

### *3. Factors 3 & 5*

The third and fifth factors, often considered together, concern the impacts of processing delays on Plaintiffs. The third factor addresses whether "human health and welfare are at stake." *TRAC*, 750 F.2d at 80. The fifth directs courts to take into account the "nature and extent of the interests prejudiced by delay." *Id.*

Here, Plaintiffs allege that, as a result of processing delays, Drokin "has had to put his professional prospects on hold," and Plaintiffs have been forced to "indefinitely suspend their professional and personal aspirations while they await a decision." ECF 1 ¶ 63. Plaintiffs further allege that the delay "has increased the cost of living abroad and introduced additional legal and logistical expenses" as Plaintiffs have been temporarily residing in Montenegro. *Id.* ¶ 64. And Plaintiffs assert that they "cannot plan for their minor child's long-term education nor provide the stability necessary for healthy emotional and developmental growth" due to the lack of "clarity regarding their future residence." *Id.* ¶ 65. Finally, Plaintiffs allege that, should their temporary residence permits expire, they would be forced to return to Russia, where they would face "risks to their personal and financial security." *Id.* ¶ 64.

The Court is sympathetic to Plaintiffs' situation and does not seek to minimize the ways in which processing delays have disrupted their lives and livelihoods. However, the sort of "financial harms" alleged by Plaintiffs, "along with the uncertainty that results any time an individual must continue to wait to secure a benefit, are insufficient to tip *TRAC* factors three and five" in Plaintiffs' favor. *Da Costa*, 80 F.4th at 345; *see also Janay*, 743 F. Supp. 3d at 117 ("Under *TRAC* and its progeny, . . . economic harms are entitled to less weight in the analysis."). And a conclusory allegation about a risk to personal security, without more, lacks necessary specificity. Allegations that are "generalized to the population" of the place in which a plaintiff resides, and that do not

"specifically link their personal circumstances" to hazardous conditions in that location, are insufficient under *TRAC* factors three and five. *Da Costa*, 80 F.4th at 345. Accordingly, these factors also tilt in favor of Defendants.

***4. Factor 6***

Finally, the sixth factor addresses "whether the agency's bad faith caused the delay." *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). Plaintiffs argue that it is "an act of bad faith on the part of Defendants [to fail] to adjudicate Plaintiff[s'] visa for so many months . . . to the extreme detriment of Plaintiff[s'] rights and privileges." ECF 7 at 54. Without specific factual support in the complaint suggesting bad faith, this assertion is merely conclusory and does not weigh in Plaintiffs' favor. *See Twombly*, 550 U.S. at 555. However, the absence of plausible allegations of impropriety does not weigh against Plaintiffs either. *TRAC*, 750 F.2d at 80 ("The court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."). Accordingly, this factor is neutral and does not alter the Court's analysis.

After weighing the *TRAC* factors, the Court concludes that Plaintiffs have not plausibly alleged that the delay in administrative processing of their visas is unreasonable. Delays in visa adjudications are undoubtedly frustrating, and the Court is cognizant of the significant impact these delays have on individuals and families seeking admission to the United States. However, accepting all of Plaintiffs' well-pled factual allegations as true, the Court concludes that the *TRAC* factors do not warrant judicial intervention. As a result, Plaintiffs have failed to state a claim for unreasonable delay.

* * *

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim, ECF 5, is **GRANTED**. As a result, Plaintiffs' complaint is **DISMISSED**. A separate order accompanies this memorandum opinion.

JIA M. COBB
United States District Judge

Date: October 5, 2026